UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-1074 (MJD/RLE)

| | |
|---|---|
| KELLY JONES, | )<br>) |
| Petitioner, | )<br>) **GOVERNMENT RESPONSE TO** |
| | ) **PETITION FOR WRIT OF** |
| v. | ) **HABEAS CORPUS PURSUANT** |
| | ) **TO 28 U.S.C. § 2241** |
| FEDERAL BUREAU OF PRISONS, | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondents. | ) |

Respondents, appearing through their attorneys, United States Attorney Frank J. Magill and Assistant United States Attorney Ana H. Voss, hereby submit this response in opposition to Kelly Jones' petition for writ of habeas corpus.

## I. INTRODUCTION

The petitioner in this matter is federal inmate Kelly Jones, Federal Register No. 55835-004 (hereinafter "Jones"). Jones is currently incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"). See Declaration of Angela Buege ("Buege Decl.") ¶ 3, Attach. A, Public Information Data. He is serving a 305-month aggregate sentence, followed by supervised release for life, imposed by the United States District Court, Southern District of Florida, for Conspiracy to Possess Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B); Conspiracy to Obstruct Justice, in violation of 18 U.S.C. § 1512(b), (c), and (k);

and Attempting to Entice a Minor to Engage in Sexual Activity Through The Use of the Internet (a supervised release violation), in violation of 18 U.S.C. § 2422(b). Id. Jones has a projected release date of September 29, 2026, via Good Conduct Time ("GCT") release. Id.

Jones filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District of Minnesota challenging a Discipline Hearing Officer ("DHO") hearing at FMC Rochester, wherein he was found to have committed the prohibited act of Use of the Telephone for Abuses other than Criminal Activity, a Code 297 violation of Bureau of Prisons' ("BOP") policy. See Motion to Vacate Sanction under 28 U.S.C. § 2241 and Const. Amendment 8 ("Petition") at 1. He alleges that the DHO falsely reported that he admitted to the charge when, in fact, he denied the charge. Id. Jones also alleges that the DHO stated Jones did not call any witnesses, even though Jones did request a civilian witness. Id. at 2. Jones also alleges that the telephone transcripts of the conversation would have revealed his innocence.[1] Id. As relief, Jones requests the Court to

---

[1] Jones states that he repeatedly requested copies of the telephone transcripts and was told to submit his request through the Freedom of Information Act ("FOIA"). See Petition at 1-2. He states that to date he has not received a proper answer to his request, in violation of the FOIA. Id. at 2.

2

expunge the incident report and restore the twenty-seven days of GCT.[2]  Id. at 4.

Jones has been charged and sanctioned in accordance with BOP policy and 28 C.F.R. § 541.13.  Because he has been provided with all of the due process to which an inmate is entitled in a prison disciplinary hearing and because the greater weight of the evidence supports the disciplinary hearing decision, this petition should be denied.

---

Jones' Exhibit C reveals that the BOP withheld the records in full because they were protected from disclosure under both the Privacy Act and the FOIA.  See Petition, Ex. C.  Jones appealed this determination, and the BOP's decision was upheld by the U.S. Department of Justice Office of Information and Privacy.  Id.

[2] Jones also states that on September 8, 2008, he received an incident report for Possession of Anything Not Authorized, a Code 305 violation of BOP policy.  See Petition at 3, Ex. D.  He states that he was found to have committed the prohibited act and was sanctioned to loss of commissary privileges.  See Petition at 3.  Jones alleges that this incident report added points to his security level, preventing him from transfer to a lower custody facility, which constitutes cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution, and that the incident report demonstrates harassment and retaliation.  Id.  These issues are inappropriate in a habeas petition because they involve conditions of confinement rather than the fact or duration of confinement. See Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996).  Inmates have no constitutionally protected liberty interest in either a particular classification or a specific place of confinement.  Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976).

3

## II. **FACTUAL BACKGROUND**

To ensure that inmates live in a safe and orderly environment, the BOP has established guidelines to impose discipline on inmates whose behavior is not in compliance with BOP rules. See 28 C.F.R. § 541.10; Buege Decl. ¶ 4. BOP staff take disciplinary action, in an impartial, non-capricious, non-retaliatory, and consistent manner, at such times and to the degree necessary to regulate an inmate's behavior within BOP rules and institution guidelines. Id.

Incident report number 1700094 was written at 12:30 p.m. on February 15, 2008, charging Jones with Use of the Telephone for Abuses Other Than Criminal Activity, a Code 297 violation of BOP policy. See Buege Decl. ¶ 5, Attach. B, Incident Report Number 1700094. Specifically, Jones placed nineteen calls to a female civilian, in which he spoke to her in code and directed her to send money to another inmate at FMC Rochester. Id. The female civilian subsequently sent money to the other inmate at FMC Rochester. Id.

Incident report number 1700094 was delivered to Jones at 7:18 p.m. on February 15, 2008. See Buege Decl. ¶ 6, Attach. B, Incident Report Number 1700094. The investigating lieutenant read the incident report to Jones, advised him of

4

his rights, provided him a copy of the incident report, and asked him whether he wanted to make a statement. Id. Jones stated that he understood his rights and chose not to make a statement. Id.

Based on the body of the incident report, supporting documentation, and Jones not providing any evidence on his behalf, the investigating lieutenant concluded that the report was true and accurate as written. See Buege Decl. ¶ 7, Attach. B, Incident Report Number 1700094. Id. It was determined that Jones was to remain in general population, and the incident report was referred to the Unit Discipline Committee[3] ("UDC") pending further hearing. Id.

Jones appeared before the UDC on February 20, 2008. See Buege Decl. ¶ 9, Attach. B, Incident Report Number 1700094. During the UDC hearing, Jones was advised of his rights. Id. Jones did not make any statement during the UDC hearing. Id.

---

[3] A UDC consists of one or more institutional staff members delegated by the Warden with the authority and duty to hold an initial hearing upon completion of the investigation. See 28 C.F.R. § 541.15; see also Buege Decl. ¶ 8. The UDC can expunge a minor, non-repetitive incident report, determine the inmate committed the prohibited act and impose minor sanctions, or refer the matter to the DHO for further review/action. Id.

5

The UDC referred the charge to the DHO[4] for further hearing. Id.

On February 20, 2008, twenty-six days prior to the DHO hearing, Jones was provided with two forms: 1) Notice of Discipline Hearing Before the DHO, and 2) Inmate Rights at Discipline Hearing, which includes the opportunity to have a staff representative, to call witnesses, and to present evidence. See Buege Decl. ¶ 10, Attach. C, Inmate Rights at Discipline Hearing and Notice of Discipline Hearing Before the DHO. Id. Jones requested a staff representative. Id. He did not request any witnesses. Id.

On March 18, 2008, twenty-six days after Jones was provided advance notice of the charges, the DHO hearing was conducted. See Buege Decl. ¶ 11, Attach. D, DHO Report. Jones was advised of his due process rights and was asked to make a statement. Id. Jones stated that he spoke with the female civilian about several paralegal places in regard to obtaining assistance with his legal work. Id. Jones said that if the other inmate received money from the female

---

[4] A DHO is an independent discipline hearing officer who is responsible for conducting institution discipline hearings and who imposes appropriate sanctions for incidents of inmate misconduct. See Buege Decl. n.2. See also 28 C.F.R. § 541.16.

civilian, it was not because he told her to send it and it was not for legal work.  Id.  Jones stated that he does his own legal work and that the other inmate had not helped him with his legal work.  Id.

The DHO then informed Jones that the other inmate admitted to providing legal assistance to Jones but stated that he did not charge for it, that Jones sent the money on his own, and that he informed Jones that he should not have done it.  See Buege Decl. ¶ 12, Attach. D, DHO Report.  Contrary to his earlier statement, Jones then admitted that he had received legal assistance from the other inmate but said that he did not send the other inmate money.  Id.

Jones also stated that he had several conversations with the female civilian over the telephone and that staff took his words out of context.  See Buege Decl. ¶ 13, Attach. D, DHO Report.  The DHO then read Jones the statements made during his telephone conversations with the female civilian.  Id.  The DHO informed Jones that the statements were direct quotes from the conversation.  Id.  The DHO told Jones that he was talking in incomplete, short sentences and that the conversation did not flow like a regular telephone conversation.  Id.  The DHO asked Jones to explain each

statement and why he spoke in that manner on the telephone. Id. Jones stated he was not talking in code but admitted to being vague on the phone. Id. He stated that the paralegal to whom he was talking does not like to use his real name. Id.

The DHO then informed Jones that the amount of money discussed on the telephone was the amount sent to the other inmate at FMC Rochester. See Buege Decl. ¶ 14, Attach. D, DHO Report. Jones told the female civilian that he was being pressured on his end. Id. Jones then stated that the female civilian did send the other inmate money but also sent money to the paralegal. Id. The DHO told Jones that staff documented the statements made on the telephone, suspected he was taking in code, and interpreted the code. Id. Based on this interpretation, staff then confirmed that money was sent to another inmate in the specific amounts discussed during Jones' telephone conversations. Id.

The Notice of Discipline Hearing Before the DHO form signed by Jones on February 20, 2008 indicated that he was requesting no witnesses, and Jones **did** **not** request any witnesses at the DHO hearing, contrary to the allegations in

the Petition.[5]  See Buege Decl. ¶ 15, Attach. C, Notice of Discipline Hearing Before the DHO, Attach. D, DHO Report, Petition at 2, Ex. B. Jones did not submit any documentary evidence at the DHO hearing.  See Buege Decl., Attach. D, DHO Report.

Jones' staff representative made a statement at the DHO hearing.  See Buege Decl. ¶ 15, Attach. D, DHO Report.  The staff representative stated that it appeared that Jones had been afforded all of his rights during the discipline process. Id.  The staff representative stated that he had spoken with Jones prior to the hearing and that Jones questioned the contents of the telephone calls.  Id.  The staff representative stated that Jones wanted a copy of the recorded telephone calls.  Id.

The DHO advised Jones that the recorded telephone calls could be requested through a FOIA request.  Id.  The DHO also advised Jones that if he wanted to obtain both sides of the

---

[5] Jones' staff representative clarified that even though Jones discussed having the female civilian as a witness with the staff representative prior to the DHO hearing, Jones did not request any witnesses during the DHO hearing.  See Buege Decl. ¶ 15 n.2, Attach. D, DHO Report.  If Jones had made such a request during the DHO hearing, the hearing would have been postponed, and/or Jones would have been advised whether any witnesses would have been allowed.  See Buege Decl. ¶ 15 n.2.

9

conversations, he would need to obtain written consent of the other party on the phone before he submitted his request. Id. The DHO informed Jones that notes on the phone calls would be available to Jones during the hearing process and were documented in the incident report. Id.

The DHO considered incident report number 1700094, Jones' contrary statements, the statement of his staff representative, telephone notes of specific comments made by Jones in code, trust fund account statements showing the money discussed on the telephone going into the other inmate's account, and photocopies of money orders sent to Jones and the other inmate from the same female civilian[6] before concluding that Jones had committed the prohibited act of Use of the Telephone for Abuses Other Than Criminal Activity, a Code 297 violation of BOP policy.[7] See Buege Decl. ¶ 16, Attach. D, DHO Report. The DHO was an impartial fact-finder because she did not write the incident report, was not the investigating

---

[6] The transcripts and documents regarding placement of money into another inmate's account are not being provided due to privacy concerns. See Buege Decl. ¶ 16 n.3.

[7] The culmination of Jones' statements, with his admissions (contrary to his initial denials) that the other inmate provided him legal assistance and that the other inmate was sent money by the female civilian, was documented as an admission under the Presentation of Evidence section in the DHO report. See Buege Decl. ¶ 14 n.1.

10

officer, was not a member of the UDC, and was not a witness to the incident. See Buege Decl. ¶ 16. The DHO sanctioned Jones to the disallowance of twenty-seven days of GCT, thirty days of disciplinary segregation (suspended pending ninety days of clear conduct), and loss of telephone privileges for three months. See Buege Decl. ¶ 17, Attach. D, DHO Report. These sanctions are in accordance with 28 C.F.R. § 541.13 and BOP policy. See Buege Decl. ¶ 17.

The DHO noted the reasons for the sanctions in the DHO report as follows:

> Inmates are provided an account number to enter into the Inmate Telephone System (ITS) to ensure that staff can identify inmates using the phone for illicit purposes. Inmates are not permitted to use the ITS for illicit purposes such as instructing their family and friends to send money to other inmates. Inmates are not allowed to give or receive anything of value from another inmate. Sanctions were imposed to express the seriousness of the infraction.

See Buege Decl. ¶ 18, Attach. D, DHO Report. The DHO then advised Jones of his appeal rights through the Administrative Remedy procedure. See Buege Decl. ¶ 19, Attach. D, DHO Report. The DHO signed the report on March 25, 2008, and the report was delivered to Jones on March 31, 2008. Id.

Jones appealed the March 18, 2008 DHO hearing through all available administrative levels. See Buege Decl. ¶ 22, Attach.

E, Administrative Remedy Generalized Retrieval Data Form. His appeals were denied. Id.

### III. ARGUMENT

**A. JURISDICTION AND VENUE**

Jones asserts jurisdiction pursuant to 28 U.S.C. § 2241. Respondent agrees that jurisdiction is proper under this section because Jones is challenging a disciplinary hearing affecting the duration of his confinement. See Preiser v. Rodriguez, 411 U.S. 475, 490 (1973); Archuleta v. Hedrick, 365 F.3d 644, 647 (8th Cir. 2004). Venue is appropriate because FMC Rochester is located in the District of Minnesota. See Schmanke v. U.S. Bureau of Prisons, 847 F. Supp. 134, 136 (D. Minn. 1994); Egan v. Hawk, 983 F. Supp. 858, 860 (D. Minn. 1997). In addition, Jones has exhausted his administrative remedies.

The only proper respondent in a habeas corpus petition under 28 U.S.C. § 2241 is the custodian of the inmate. 28 U.S.C. §§ 2242-43; Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 495-96 (1973); United States v. Chappel, 208 F.3d 1069, 1070 (8th Cir. 2000). For purposes of habeas petitions, the custodian of an inmate is the Warden of the facility in

which the inmate is confined. Rumsfeld, 542 U.S. at 435. The Federal Bureau of Prisons and the United States of America are not appropriate respondents in this habeas action and should be dismissed. M.R. Babcock, the Acting Warden of FMC Rochester, should be substituted as the respondent in this petition.

**B. THE BOP AFFORDED JONES THE DUE PROCESS TO WHICH HE WAS ENTITLED IN AN INMATE DISCIPLINARY MATTER.**

Due process is applicable to the BOP through the Fifth Amendment. The Due Process Clause of the Fifth Amendment provides procedural protection against arbitrary actions of the government which affect an individual's life, liberty, or property interest. To state a due process claim, "there must be some legal entitlement, right or liberty interest that is protected under state or federal law." Rem v. United States Bureau of Prisons, 320 F.3d 791, 794 (8th Cir. 2003); Peck v. Hoff, 660 F.2d 371, 373 (8th Cir. 1981) (citing Meachum v. Fano, 427 U.S. 215, 223-24 (1976)).

The primary role the courts have played in reviewing inmate discipline cases is to ensure that the due process procedures established by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974), have been met. Internal prison disciplinary proceedings do not function in the same

manner as criminal prosecutions because inmates are not afforded the "full panoply of rights" as criminal defendants. Ponte v. Real, 471 U.S. 491, 495 (1985) (citing Wolff, 418 U.S. at 556).

In Wolff, the Supreme Court set forth limited procedural rights an inmate possesses in any disciplinary action where liberty issues are at stake, such as loss of good conduct time, placement in solitary confinement or other serious consequences. Wolff, 418 U.S. at 556-80; see also Sandin v. Conner, 515 U.S. 472, 484 (1995) (liberty interests "will be generally limited to freedom from restraint which . . . imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life");[8] Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002).

In Wolff, the Supreme Court held that due process is

---

[8] The Eighth Circuit has noted the loss of good time credits invokes the Wolff Due Process requirements, which take into account the structure and content of the prison disciplinary hearing. Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir. 2002). An inmate is undoubtedly deprived of a liberty interest when he is deprived of good time credits; however, this is not comparable to a criminal conviction, nor a parole revocation. Brown v. Frey, 807 F.2d 1407, 1410-11 (8th Cir. 1986) (citing Superintendent v. Hill, 472 U.S. 445 (1985); Wolff, 418 U.S. at 567-68).

14

satisfied in prison discipline hearings when the inmate receives: (1) at least twenty-four hours advance written notice of the charges against him prior to the disciplinary hearing, (2) the right to call witnesses except where security and the good order of the institution would be jeopardized, (3) the right to a staff or other representative where charges are complex or the inmate is illiterate, (4) the right to a written report of the decision of the discipline committee setting forth the specific evidence relied on and a reason for the sanction, and (5) an impartial hearing committee. Wolff, 418 U.S. at 563-71. The Wolff requirements have been codified by the BOP at 28 C.F.R. § 541. The Eighth Circuit has echoed these requirements, recognizing the limitations set forth in a prison setting, in the Espinoza case. Espinoza, 283 F.3d at 951-52.

Jones was afforded each of the above basic elements required for due process in his disciplinary hearing on incident report number 1700094. On February 15 and 20, 2008, Jones was provided with advance written notice of the disciplinary charges against him, which is much more than twenty-four hours in advance of his appearance before the DHO on March 18, 2008. See Buege Decl. ¶¶ 6, 11, Attach. B,

15

Incident Report, Attach. D, DHO Report.

Jones did request a staff representative, who made a statement at the DHO hearing. See Buege Decl. ¶ 15, Attach. D, DHO Report. He did not request any witnesses at his DHO hearing and did not present any documentary evidence. See Buege Decl. ¶¶ 10, 15, 15 n.2, and Attach. C, Notice of Discipline Hearing Before the DHO, Attach. D, DHO Report. While Jones may have told his staff representative at some time before the hearing that he wanted to present witnesses, Jones cannot complain of a due process violation when he never requested the opportunity to present witnesses to the DHO. See id.

Jones was given the opportunity to persuade an impartial decision maker that he did not commit the prohibited conduct as alleged and did make a statement, but the DHO was not persuaded by his contradictory claims. The DHO was an impartial fact finder because the DHO was not a witness to the incident, did not write the incident report, did not investigate the matter, and was not a member of the UDC. See Buege Decl. ¶ 16. Jones also was provided a copy of the written DHO decision, documenting the evidence relied on by the DHO and the reasons for the disciplinary action. See Buege

16

Decl. ¶ 19, Attach. D, DHO Report. Thus, Jones was provided all the due process requirements in Wolff. Wolff, 418 U.S. at 584.

**C. SUFFICIENT EVIDENCE SUPPORTS THE DECISION OF THE DHO THAT JONES COMMITTED THE PROHIBITED ACT.**

In Superintendent v. Hill, 472 U.S. 445 (1985), the Supreme Court provided guidance to courts reviewing the Wolff requirement for a statement of the evidence relied upon by the decision maker after a prison discipline hearing. The Supreme Court stressed that the decision of a prison disciplinary officer is entitled to considerable deference by a reviewing court. Id. at 455-56. If the requirements of due process are met, then the decision of the prison discipline officer must be upheld if there is "some evidence" to support the decision. Id. at 457; Goff v. Dailey, 991 F.2d 1437, 1442 (8th Cir. 1993), cert. denied, 510 U.S. 997 (1993); Gomez v. Graves, 323 F.3d 610, 612 (8th Cir. 2003).

Superintendent clearly defines "some evidence" as (1) statements or testimony, and/or (2) a written account of the incident or incident report. Superintendent, 472 U.S. at 456. See also Gomez, 323 F.3d 610, 611-12; Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997). The Superintendent court described the process to be used by the reviewing court:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board.

Superintendent, 472 U.S. at 455-456 (emphasis added); see also Louis v. Dep't of Correctional Servs. of Neb., 437 F.3d 697, 700 (8th Cir. 2006). Ultimately, the Superintendent court concluded that "the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause." Superintendent, 472 U.S. at 456 (citing the testimony of a prison guard and copies of his written report as sufficient evidence).

At the DHO hearing, there was more than some evidence supporting the DHO's decision that Jones committed the prohibited act. The record is clear that Jones was talking in code to a female civilian, directing her to send money to another inmate who had assisted Jones with his legal work. The notes from the telephone conversations reveal that the money discussed was, in fact, forwarded to another inmate at FMC Rochester. Jones' statements to the contrary are not credible because they are contradictory.

In this case, upon conclusion of the DHO hearing, some

evidence existed in the record to support the DHO's finding that Jones committed the prohibited act. The DHO took into consideration all of the available evidence and determined that the greater weight of the evidence supported the charges against Jones. There is not only <u>some</u> evidence but a preponderance of the evidence to establish that the DHO reasonably concluded that Jones committed the prohibited act. The findings of the DHO were upheld during the administrative appeal process.

Respondent respectfully submits that this Court's role is very limited, and it should not interpose its decision concerning the weight of the evidence. The courts are not part of the appellate process for prison discipline proceedings. <u>Courtney v. Bishop</u>, 409 F.2d 1185, 1187 (8th Cir.), <u>cert denied</u>, 396 U.S. 915 (1969); <u>Mason v. Sargent</u>, 898 F.2d 679, 680 (8th Cir. 1990). Once a reviewing court determines that there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by a petitioner and uphold the finding of the DHO. <u>Superintendent</u>, 472 U.S. at 457; <u>Brown</u>, 807 F.2d at 1414; <u>Goff</u>, 991 F.2d at 1442. Because there was more than some evidence presented to the DHO in this case, Jones' petition

should be denied. No evidentiary hearing is needed.

## IV. CONCLUSION

Jones has been appropriately charged and sanctioned in accordance with BOP policy and 28 C.F.R. § 541.13. Jones was provided with the due process to which he was entitled in an inmate disciplinary matter, and sufficient evidence supports the DHO's decision that he committed the prohibited act. Therefore, Jones' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 should be denied.

Dated: June 10, 2009                Respectfully submitted,

                                    FRANK J. MAGILL
                                    United States Attorney

                                    s/ Ana H. Voss

                                    BY: ANA H. VOSS
                                    Assistant U.S. Attorney
                                    Attorney ID No. 483656
                                    600 U.S. Courthouse
                                    300 South Fourth Street
                                    Minneapolis, MN 55415
                                    (612) 664-5600
                                    (612) 664-5788 (facsimile)
                                    ana.voss@usdoj.gov