UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Kelly Jones,

Petitioner,

vs.                                        REPORT AND RECOMMENDATION

Federal Bureau of Prisons,
and United States of America,

Respondents.          Civ. No. 09-1074 (MJD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, which challenges

the duration of his sentence, see, Title 28 U.S.C. §2241, together with three (3) self-

styled "Motions for Sanctions."  The Petitioner Kelly Jones ("Jones") appears pro se,

and the Respondent[1] appears by Ana H. Voss, Assistant United States Attorney.  For

_____

[1]We note that a Habeas Corpus Petition is properly brought against the
prisoner's custodian -- in this case, the Warden of the Federal Medical Center, in
Rochester, Minnesota.  See, Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004).  As
requested by the Respondent, for these purposes, we substitute Jones' Warden, M.R.
(continued...)

reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied, as moot, and that the Motions for Sanctions also be denied.

## II. Factual and Procedural Background

Jones is a Federal prisoner, who is currently serving a 305-month aggregate sentence at the Federal Medical Center, in Rochester, Minnesota ("FMC-Rochester"). The sentence resulted from Jones's conviction, in the United States District Court for the Southern District of Florida, for Conspiracy to Possess Child Pornography, in violation of Title 18 U.S.C. §2252(a)(4)(b), for Conspiracy to Obstruct Justice, in violation of Title 18 U.S.C. §1512(b), (c), and (k), and for Attempting to Entice a Minor to Engage in Sexual Activity Through the Use of the Internet, which was committed which on supervised release, in violation of Title 18 U.S.C. §2422(b). See, Declaration of Angela Buege ("Buege Decl."), Docket No. 7, at ¶3, and Attachment A at 4-5.

As to the facts which underlie Jones's Petition for Habeas relief, on February 15, 2008, while Jones was incarcerated at FMC-Rochester, an investigation revealed that Jones made nineteen (19) telephone calls to a female, between November 20,

---

[1](...continued)
Babcock, as the Respondent in these proceedings.

2007, and February 7, 2008, which were in violation of the Federal Bureau of Prisons ("BOP") Regulations, Code 297.  See, <u>Buege Decl.</u>, supra at ¶5, and Attachment B, at 1-2.  The Incident Report discloses that Jones had spoken in code during the phone calls, that he had directed the female to place money into the account of another inmate, that a comparison of envelopes revealed the same sender, and that the female had sent money to the other inmate's account.  <u>Id.</u>

At 7:18 o'clock p.m. on February 15, 2008,  Officer M. Juenger ("Juenger") delivered the Incident Report to Jones.  See, <u>Petition</u>, <u>Docket No. 1</u>, at 1; <u>Buege Decl.</u>, at ¶6.  Juenger read the Incident Report to Jones, advised Jones of his rights, provided a copy of the Report to him, and asked Jones if he wanted to make a statement.  <u>Buege Decl.</u>, at ¶6, and Attachment B, at 4.  Jones stated that he understood his rights, he declined to make a statement, and he requested no witnesses at that time.  <u>Id.</u> at ¶6, and Attachment B at 4.

According to the Respondent, on February 20, 2008, an informal Hearing on the charges was held before a Unit Discipline Committee ("UDC").  <u>Id.</u> at ¶9; see also, <u>28 C.F.R. §541.15</u>.  Jones did not make a statement during the UDC Hearing, and the UDC referred the violation to a Discipline Hearing Officer ("DHO") for a formal

Hearing.[2] Id.; see also, 28 C.F.R. §541.16.  On that same day, Jones received written

notice of the formal Hearing, which advised him of his right to appear, his right to

present evidence, and his right to have staff assistance.  Id. at ¶10, and Attachment C.

At that time, Jones requested a Staff Representative, but he did not request witnesses.

Id. at ¶10, and Attachment C, at unmarked pg. 2.

On March 18, 2008, Jones appeared before the DHO.  Id. at ¶11, and

Attachment D.  He was advised of his rights, and his Staff Representative, Tim

Wegner ("Wegner"), stated that he had reviewed the packet, and that Jones had been

afforded all of his rights during the discipline process up to that point.  Id., Attachment

D, at 1 of 3.  Jones did not present any written evidence, but requested a copy of the

transcripts of the recorded telephone calls.  Id.  The DHO told Jones that he could

request the transcripts through the Freedom of Information Act ("FOIA"), and that he

---

[2]According to the Respondent, the UDC has both the authority and the duty to hold an initial Hearing upon the completion of an investigation, and "can expunge a minor, non-repetitive incident report, determine the inmate committed the prohibited act and impose minor sanctions, or refer the matter to the DHO for further review/action."  Buege Decl., at ¶8.

The Respondent further advises that the DHO is an "independent discipline hearing officer who is responsible for conducting institution discipline hearings and who imposes appropriate sanctions for incidents of inmate misconduct."  Respondent's Memorandum in Opposition, Docket No. 6, at 6 n. 4, citing 28 C.F.R. §541.16.

- 4 -

would need the written consent of the party on the other end of the telephone line in order to obtain a record of both sides of the phone calls.  Id.  The DHO stated that she did not have the authority to release the transcripts of the calls to Jones.  Id.[3]

According to the DHO Report, Jones made a statement at the DHO Hearing, in which he stated that he was speaking to the female about a paralegal, and not about another inmate.  Id.  The DHO then informed Jones that the other inmate had admitted that he had provided legal advice to Jones, and that Jones had sent him money.  Id.  Thereafter, Jones admitted that he had received legal assistance from the other inmate, but he denied sending money to the other inmate, and he claimed that his words, in the telephone calls, were taken out of context.  Id.  The DHO read excerpts of the telephone calls out loud and, when the DHO asked Jones to explain why his words "did not flow like a regular phone conversation," Jones admitted to "being vague," but he denied speaking in code, and he stated that the paralegal, to whom he was sending money, did not like using his real name.  Id.  Subsequently, according to the DHO

---

[3]Jones requested a complete, unedited copy of the transcripts in an Inmate Request to Staff dated February 21, 2008, which was denied.  See, Petition, Exhibits, Docket 1-1, at 6-7 of 12, Exhibit C.  Pursuant to the requirements of Title 28 C.F.R. Section 513.60, Jones sent a Freedom of Information/Privacy Act Request on March 25, 2008, to the BOP, asking for complete copies of the transcripts, which was also denied on October 29, 2008.  Id. at 8-10 of 12.

Report, "[t]he DHO told inmate Jones that the amount of money discussed on the phone, was the amounts [sic] sent to the other inmate * * * [and that] inmate Jones also told [redacted] that he was being pressured on his end * * * [and] [i]nmate Jones stated that [redacted] did send the other inmate money, but she sent my paralegal money too."  Id.  According to the Respondent, the DHO concluded from these statements that Jones had admitted the conduct alleged, and she checked the corresponding box on the Report.  Id.; Buege Decl., at 4 n.1.

The DHO found that, based upon the greater weight of the evidence, Jones had committed the prohibited acts as charged.  Buege Decl., Attachment D, at 2.  The DHO based her conclusion on the Incident Report; the telephone notations, which included specific statements made by Jones; the inmate account information, which revealed that the money, which was discussed on the telephone, went into the other inmate's account; a photocopy of the money orders that were sent to Jones, and to the other inmate, which showed that the same person had sent them; together with the inmate and staff representative statements, as recorded in the Report.  Id.  The DHO noted that she had not relied on any confidential information.  Id.  The DHO disallowed twenty-seven (27) days of Good Conduct Time; imposed thirty (30) days

of disciplinary segregation, which was suspended pending ninety (90) days of clear conduct; and three (3) months of lost telephone privileges.  Id. at 3.

Jones exhausted his administrative remedies, see, Buege Decl. at ¶22, and Attachment E, and Petitioner's Reply to Government Response to Petitioner's Motion for Sanctions, Docket 24-1, at 1-4 of 12, and he filed this Habeas Corpus Petition on May 7, 2009, in which he contends, that at the DHO Hearing of March 18, 2008, the DHO improperly denied his request for a witness, and falsely noted, on her Report, that he had not made the request, in violation of his Due Process rights.  See, Petition, at 2.  Jones also alleges that the Respondent violated his Due Process rights by denying him transcripts of the recorded telephone calls, which would have helped him to present his defense, and by reporting that he had admitted the conduct charged in the consideration of the evidence against him.  See, Id. at 1-2.

Jones has submitted two (2) Inmate Request to Staff communications, between himself and Wegner, in which Wegner confirms that Jones had asked to present a witness to testify.  Petition, Docket 1-1, at 4-5 of 12, Exhibit B.  The Respondent has also submitted Wegner's Declaration, in which he avers that he and Jones discussed calling a witness before the DHO Hearing, and that he believed that Jones did ask to call the witness at the Hearing.  Declaration of Thomas Wegner ("Wegner Decl."),

- 7 -

Docket No. 18, at ¶3.  Wegner also avers that he spoke to Buege about his role as Jones' staff representative, and that there was a misunderstanding, at that time, concerning what Wegner had meant on the Inmate Staff Request.  Id.

In his Petition, Jones requests that the record of his disciplinary conviction, in March of 2008, be expunged, and that his lost Good Time Credit be restored.  Petition, at 4.  In addition, Jones requests that a separate Incident Report, for "possession of anything not authorized," which was issued on September 8, 2008, and for which Jones was sanctioned by the UDC with a loss of commissary privileges, and with the addition of points to his custody level, also be vacated, as constituting cruel and unusual punishment under the Eighth Amendment.  Id., at 3, and Docket 1-1, Exhibit D, at 11 of 12.

Upon obtaining Wegner's Declaration, the Respondent expunged the disciplinary decision that Jones contests in his Petition, put Jones on a "pending" status, and directed that a new DHO Hearing take place, so that Jones could have "an opportunity to request testimony from his witness."  Second Declaration of Angela Buege ("Second Buege Decl."), Docket No. 19, at ¶4, and Attachments A and B.[4]  In

---

[4]We note that the Respondent has also submitted the Declaration of the DHO, who attests that, to the best of her recollection and notes, Jones did not request a
(continued...)

Jones's Third Motion for Sanctions, he represents that the second Hearing took place on August 18, 2009.  See, Docket No. 26, at 1.  As a result, the Respondent contends that Jones's Petition should be denied as moot, since Jones has received all of the relief to which he is entitled, including a new Hearing so as to afford him his Due Process rights, pursuant to the standards enunciated in Wolff v. McDonnell, 418 U.S. 539 (1974), which, it contends, removes all justiciable issues.  See, Government's Response to Petitioner's Motion for Sanctions, Docket No. 13, at 5.

In response, Jones contends that, because he thoroughly appealed the DHO's decision of March 25, 2008, and included copies of the Inmate Request to Staff, in which Wegner confirmed that Jones had requested a witness, the Respondent had ample opportunity to provide him with a new Hearing, and that to do so now is unjust. See, Petitioner's Reply to Government Response ("Reply"), Docket No. 24, at 4 and 6.  Jones further contends that he has asserted more Due Process violations than just the denial of a witness which, from our reading of the pleadings, includes the Respondent's refusal to provide him with transcripts of the telephone calls, that would

_____

[4](...continued)
witness.  See, Declaration of E. Alexander, Docket No. 16, at ¶3 and 5.

- 9 -

have assisted him in the presentation of his defense, as well as the assertedly false factual finding that he admitted the charge against him.  Id. at 5.

In addition, Jones has filed one (1) Motion for Sanctions, pursuant to Rule 11, Federal Rules of Civil Procedure, which relates to the Respondent's filings in regard to his request for a witness, see, Docket No. 11; two (2) Motions which are labeled as Motions for Sanctions, but which request injunctive relief, and which we construe as Motions for a Temporary Injunction, see, Docket Nos. 12 and 26; as well as a Motion to Supplement his Pleadings, See, Docket No. 22, which we address in our accompanying Order, which denies that Motion.  We address the merits of Jones' Petition first, and then proceed to his Motions for Sanctions, and for a Temporary Injunction.

### III.  Discussion

A.    Standard of Review.  The Fifth Amendment prohibits the Federal Government from depriving a person of life, liberty, or property, without due process of law.  While it is true that the constitutional protections, which are encompassed by the Due Process Clause, do not abate at the time of imprisonment, see, Hudson v. Palmer, 468 U.S. 517, 539 (1984)(O'Connor, J., concurring), it is also true that "lawful incarceration brings about the necessary withdrawal or limitation of many

- 10 -

privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin v. Conner, 515 U.S. 472, 485 (1995), quoting Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977), quoting, in turn, Price v. Johnston, 334 U.S. 266, 285 (1948).

Although prison disciplinary proceedings often implicate liberty interests, they are not criminal Trials, and therefore, they do not involve the full panoply of procedural and substantive protections that are available in criminal proceedings. See, Wolff v. McDonnell, supra at 567-68. Nevertheless, in Wolff, the Supreme Court enumerated the minimum due process requirements of a prison disciplinary proceeding as follows:

> 1.      Written notice of the claimed violation must be given to the prisoner at least 24 hours prior to the Hearing;
>
> 2.      A written statement must be compiled by the factfinder describing the evidence relied upon and the reasons for the findings and disciplinary action;
>
> 3.      The prisoner should be permitted to call witnesses and to present evidence in defense of the charges, unless doing so would jeopardize institutional safety or correctional goals; and
>
> 4.      Where the inmate is illiterate, or the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate

> comprehension of the case, he should be free to seek the aid
> of a fellow inmate, or have adequate substitute aid in the
> form of help from the staff or from a sufficiently competent
> inmate designated by the staff.

Id. at 563-70.

Beyond those procedural due process considerations, the Supreme Court has

determined that, in order to comply with constitutional due process, at least "some

evidence" must support the finding of a disciplinary sanction.  See, Superintendent v.

Hill, 472 U.S. 445, 455 (1985).  As explained by the Court:

> This standard is met if there is some evidence from which
> the conclusion of the administrative tribunal could be
> deduced. * * * Ascertaining whether this standard is
> satisfied does not require examination of the entire record,
> independent assessment of the credibility of witnesses, or
> weighing of the evidence.  Instead, the relevant question is
> whether there is any evidence in the record that could
> support the conclusion reached by the disciplinary board.

Id. at 455 [quotations omitted]; see also, Louis v. Department of Correctional Services
of Nebraska, 437 F.3d 697, 700 (8th Cir. 2006).

Given these legal precepts, we turn to an analysis of Jones' grievance.

    B.    Legal Analysis.  The Respondent argues that the Petition has been

rendered moot by the decision to vacate the DHO's conviction in March of 2008, and

the resultant sanctions, including the reinstatement of the Good Time Credit lost, the

expunction of the Hearing from Jones' disciplinary record, and the allowance of a

rehearing on the matter, so as to afford Jones an opportunity to call his witness. We agree.

Article III of the Constitution allows Federal Courts to adjudicate only actual, ongoing cases or controversies. See, <u>Americans United for Separation of Church and State v. Prison Fellowship Ministries</u>, 509 F.3d 406, 420-21 (8th Cir. 2007), citing <u>Haden v. Pelofsky</u>, 212 F.3d 466, 469 (8th Cir. 2000); see also, <u>Potter v. Norwest Mortgage, Inc.</u>, 329 F.3d 608, 611 (8th Cir. 2003). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate" and, "[w]hen an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action." <u>Potter v. Norwest Mortgage, Inc.</u>, supra at 611 [citations and internal quotations omitted].

Here, the Plaintiff requested, for relief, the expunction of the record from his BOP file, and the restoration of the twenty (27) days of Good Time Credit. See, <u>Petition</u>, at 4. Upon expunction of the DHO Hearing record of March 18, 2008, from Jones' disciplinary file, and the restoration of Jones' lost Good Time Credit, see, <u>Second Buege Decl.</u>, supra at ¶4, and Attachments A and B, Jones received the relief requested, and there remains no controversy which relates to the DHO Hearing of March 18, 2008. See, <u>Sloley v. O'Brien</u>, 2008 WL 2852023 at *2 (W.D. Va., July 22,

2008)(no viable issues remained to be resolved, where the disciplinary action was remanded for rehearing by the administrative board, and the inmate discipline record was updated to "reflect no loss of good conduct time based on the challenged disciplinary action"); Ashby v. Lehman, 2007 WL 1521528 at *6 (W.D. Wash., May 23, 2007)(restoration of Good Time Credit rendered the case moot); Randall v. Martinez, 289 Fed.Appx. 478, 480 (3rd Cir. 2008)(Habeas Corpus Petition mooted, to the extent it requested a restoration of Good Time Credit, when BOP restored the Credit on its own volition, and expunged the Incident Report); Finney v. Coughlin, 2 Fed. Appx. 186, 189 (2nd Cir. 2001)(reciting an earlier iteration of the case, which had been denied as moot, because the prison expunged the record on its own accord); see also, Flanagan v. Warden, United States Penitentiary, Leavenworth, 959 F.2d 245 at *1 (10th Cir. 1992)(Petition was moot, even though Regional Director had directed that a new Hearing could take place); Flittie v. Erickson, 724 F.2d 80, 81 (8th Cir. 1983)(in respect to parole hearings, "[e]ven assuming that the [parole] board had inaccurate information before it in [the subsequent hearing], and that the information

prejudiced its decision, we could not appropriately grant relief under the pleadings in this case," which were related to the initial Hearing).[5]

Jones argues that the circumstances of this case fall under the exceptions to mootness for the likelihood of repetition, and for voluntary cessation, because the BOP has conducted a second Hearing with respect to the same phone calls. We disagree with the contention that an exception here exists. The "capable of repetition" exception applies when the challenged action is "in its duration too short to be fully litigated prior to cessation or expiration; and * * * there is a reasonable expectation that the same complaining party will be subject to the same action again." Davis v.

---

[5]By finding Jones' challenge to the DHO Hearing of March 18, 2008, to be moot, we do not imply that the alleged violation -- the summary denial of a requested witness -- is proper. It is well-settled, pursuant to Wolff v. McDonnell, 418 U.S. 539, 566 (1974), that inmates have a limited right to present witnesses at disciplinary hearings, unless to do so would be "unduly hazardous to institutional safety or correctional goals" id. at 566, or if the testimony would be irrelevant, cumulative, or unnecessary. See, Hudson v. Hedgepeth, 92 F.3d 748, 752 (8th Cir. 1996). Further, "[t]hough prison officials have broad discretion to limit an inmate's right to call witnesses, the officials 'may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify * * * either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing.'" Espinoza v. Peterson, 283 F.3d 949, 953 (8th Cir. 2002), quoting Ponte v. Real, 471 U.S. 491, 497 (1985). We accept that "[p]rison officials may not arbitrarily deny an inmate's request to call witnesses at a disciplinary proceeding," but that right is not here at issue. Moran v. Farrier, 924 F.2d 134, 137 (8th Cir. 1991), citing Graham v. Baughman, 772 F.2d 441, 444 (8th Cir. 1985).

Federal Election Com'n, --- U.S. ----, 128 S.Ct. 2759, 2769 (2008); see also, Singleton

v. Norris, 319 F.3d 1018, 1022 (8th Cir. 2003), cert. denied, 540 U.S. 832 (2003).

Here, Jones has alleged that the Respondent corrected only one (1) of the

alleged due process violations in his second Hearing -- the allowance of a witness --

but "continued" or committed other violations.  However, as our Court of Appeals has

explained, "'the proper inquiry is whether the [challenged] activity is **by its very**

**nature short in duration**, so that it could not, or probably would not, be able to be

adjudicated while fully alive.'"  Hickman v. State of Missouri, 144 F.3d 1141, 1143

(8th Cir. 1998)[emphasis in original].  There is nothing to preclude Jones from filing

a Petition which challenges the conduct of the second Hearing, on the specific facts

of that Hearing, and so, his complaints are capable of being fully adjudicated in a

separate action.  See, Brewer v. Arkansas, 2010 WL 129775 at *3 (E.D. Ark., January

11, 2010)(case moot because there was no expectation that the violation would occur

again and, if it did, there was no indication that the petitioner would be unable to seek

relief); Rehkop v. Moore, 2006 WL 903242 at *3 (E.D. Mo., April 7, 2006)(the

Petition was moot where there was nothing to show that "the time between extension

of a conditional release date for failure to complete [an offender program] and

expiration of a sentence is always so short as to evade review.").

- 16 -

We are mindful that successive Petitions for Habeas Corpus may be denied, on equitable grounds, for an "abuse of the writ." See, generally, <u>McCleskey v. Zant</u>, 499 U.S. 467 (1991). However, the common law doctrine, as applied to Section 2241 Petitions,[6] would not prohibit Jones from challenging separate Disciplinary Hearings, particularly where we have denied his Motion to Supplement. See, <u>Palmer v. Clarke</u>, 961 F.2d 771, 775 (8th Cir. 1992); <u>In re Taylor</u>, 171 F.3d 185, 187-88 (4th Cir. 1999) (Habeas Petition which sought to raise "only new issues arising from a resentencing" was not successive); see also, <u>Kentz v. Wilner</u>, 2008 WL 533538 at *2 (D. Colo., February 27, 2008)(second Section 2241 Habeas Petition denied as abuse of the Writ, because it challenged the exact same Disciplinary Hearing, but on a slightly different legal ground); <u>Boling v. Williamson</u>, 305 Fed.Appx. 7, 8 (3rd Cir., December 31, 2008)(Petition denied for abuse of the Writ where the challenged Parole Reconsideration Hearing had occurred before a previous Habeas action had been filed).

---

[6]As our District has recognized, the limitations of Title 28 U.S.C. Section 2244 "only appl[y] to second or successive habeas petitions under 28 U.S.C. §2255 concerning a federal court judgment and second or successive habeas petitions under 28 U.S.C. §2254 concerning a state court judgment." <u>Haughton v. United States</u>, 2009 WL 1562750 at *2 (June 2, 2009).

Additionally, the denial of a Petition for mootness is not an adjudication on the merits, because it is not a jurisdictional bar to suit, and therefore, would not give rise to the <u>res judicata</u> underpinnings of the "abuse of the writ" doctrine.  See, <u>Malkowski v. Gonzalez</u>, 2009 WL 1578816 at *1 (E.D. Mo., June 3, 2009); <u>McCarney v. Ford Motor Co.</u>, 657 F.2d 230, 233 (8th Cir. 1981)(dismissals based on standing, mootness, ripeness, or questions of advisory opinions, do not "preclude a second action on the same claim if the justiciability problem can be overcome").  Indeed, any other result would be untenable, and accordingly, this case does not fall within the "capable of repetition" exception to the mootness doctrine.

Jones also argues that his Petition is not moot, because the Respondent has voluntarily ceased the illegal conduct which it is free to resume.  This exception applies where the "resumption of the challenged conduct * * * depend[s] solely on the defendants' capricious actions by which they are 'free to return to [their] old ways.'" <u>Steele v. Van Burden Public School Dist.</u>, 845 F.2d 1492, 1494 (8th Cir. 1988), quoting <u>Allen v. Likins</u>, 517 F.2d 532, 535 (8th Cir. 1975).  Here, Jones has not alleged that the Respondent has temporarily discontinued an illegal policy, which it may reinstitute at any time, see, e.g., <u>Lowry ex rel. Crow v. Watson Chapel School District</u>, 540 F.3d 752, 761 n. 8 (8th Cir. 2008), cert. denied, --- U.S. ---, 129 S.Ct. 1526 (2009),

- 18 -

or any other ongoing illegal conduct, which has been temporarily halted to avoid responsibility.  See, e.g., <u>Parham v. Southwestern Bell Telephone Co.</u>, 433 F.2d 421, 426 (8th Cir. 1970).  Indeed, the second Hearing was conducted in order to provide Jones with the opportunity to call his witness, and correct any due process errors which may have occurred at the first Hearing and, as noted, Jones may challenge the second Hearing on its particular facts.

As a result, there is no indication, let alone a showing, that the Respondent has attempted to avoid being held accountable for due process violations, or that such an avoidance is even possible.  See, <u>Aaran Money Wire Service, Inc. v. United States</u>, 2003 WL 22143735 at *6 (D. Minn., August 21, 2003)("The [voluntary cessation] exception prevents defendants from avoiding judicial scrutiny by ceasing their illegal conduct."), citing <u>City News & Novelty, Inc. v. Waukesha</u>, 531 U.S. 278, 284 n.1 (2001)(the voluntary cessation doctrine "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.")  Therefore, we recommend dismissal of that portion of Jones' Petition, which challenges the DHO Hearing of March 18, 2008, as moot.[7]

_____

[7]Jones has also raised a public interest argument; namely, that DHOs unfairly believe staff members over prisoners.  In Federal Court, there is no public interest
(continued...)

As to the Incident Report of September 8, 2008, and the resulting sanctions imposed by the UDC, we find that they have no direct bearing on the legality, or the duration, of Jones' custody, at least for the purposes of this Habeas Corpus action. See, <u>Martin v. Mooney</u>, 2007 WL 1306409 at *20 (D. Minn., May 3, 2007)(holding that the petitioner's claim that he was deprived of legal paperwork must be brought in a civil rights action, as a challenge to the conditions of confinement, rather than in a Habeas proceeding); <u>Sloley v. O'Brien</u>, supra at *1 n.1 (challenges to the imposition of sanctions of loss of commissary, television, and visiting privileges, does not concern the fact or duration of confinement, and is not properly brought in a Habeas Corpus action); <u>Hinebaugh v. Wiley</u>, 137 F. Supp.2d 69, 76 (N.D.N.Y. 2001) ("[N]ormally * * * the loss of commissary and other non-custodial privileges * * * are not 'close to the core of habeas corpus' in the sense that expunging them from the prisoner's record does not definitively alter the terms and duration of his confinement," but declining to dismiss the Petition, in order to allow for further fact development)[quotation omitted]; see also, <u>Whitley v. Hunt</u>, 158 F.3d 882, 889 (5th

---

[7](...continued)
exception to mootness.  See, <u>Hickman v. State of Missouri</u>, 144 F.3d 1141, 1144 (8th Cir. 1998).

Cir. 1998)("Inmates have no protectable property or liberty interest in custodial classification."), abrogated on other grounds, <u>Booth v. Churner</u>, 532 U.S. 731 (2001).

Notably, unlike the gravamen of the primary basis for his Petition, this is **not** a claim regarding a prison policy which affects the computation of Good Time Credit, so as to directly affect the duration of the Petitioner's confinement.  See, <u>Davis v. Norris</u>, 230 Fed.Appx. 636, 636-37 (8th Cir. 2007)(holding that a challenge to the loss of Good Time Credit must first be brought in a Habeas proceeding); <u>Sheldon v. Hundley</u>, 83 F.3d 231, 233 (8th Cir. 1996)(concluding that a challenge to a disciplinary action, which resulted in a loss of Good Time Credit, must first be remedied in a Habeas proceeding).[8]  Accordingly, to the extent that Jones claims that

---

[8]Jones argues that the Incident Reports -- or "shots" -- do impact upon the duration of his confinement, because the "shots" are taken into consideration in calculating the Good Time Credit that is lost for offenses where such a sanction is allowed.  See, <u>Petitioner's Response to Government's Request to Deny</u>, <u>Docket No. 10</u>, at 2.  However, he has submitted nothing which would indicate that his Good Time Credit is likely to be affected by the Incident Report in September of 2008, and we agree with those Courts which have held that such an attenuated connection is not sufficient to raise a claim, under Section 2241, so as to attack the length or duration of confinement.  See, <u>Sisk v. CSO Branch</u>, 974 F.2d 116, 117-18 (9th Cir. 1992) (claims which have only a speculative or incidental effect on the sentence length are proper in a civil rights action, as they could not be brought in a Habeas action); <u>Hinebaugh v. Wiley</u>, 137 F. Supp.2d 69, 76 (N.D.N.Y. 2001)(denying Motion to Dismiss, based upon the Petitioner's assertion that the previous reports had been used by the DHO to increase the Good Time Credit ultimately lost); <u>Cardenas v. Wigen</u>,

(continued...)

the imposition of disciplinary segregation and additional points to his offender level

has violated his rights, we find that we cannot properly remedy that asserted violation

in a Habeas proceeding.

Moreover, Jones appears to base this claim on the BOP's failure to follow its

own rules in issuing an Incident Report and, as such, he has not stated a cognizable

claim for an infringement of his Due Process rights, because prisoners do not have a

Federal constitutional liberty interest in having prison officials follow prison

regulations.  See, <u>Phillips v. Norris</u>, 320 F.3d 844, 847 (8th Cir. 2003).  Of course, we

do not suggest that there are no legal remedies, of any kind, for the type of claim that

the Petitioner is attempting to assert.  If he believes that, on facts which have not been

disclosed here, his rights under Federal law, or the Constitution, have been violated,

then he may be entitled to seek relief in a traditional civil action -- i.e., a non-Habeas

action.  In particular, he may be able to bring a civil rights action under <u>Bivens v. Six</u>

<u>Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971),

although we express no view as to the likelihood of success on any such claim.  We

---

[8](...continued)
921 F. Supp. 286, 292 (E.D. Pa.. 1996)("To the extent that Petitioners conjecture that
their ability to earn good time credits in futuro may be detrimentally affected by the
discipline imposed, such claims are rejected as speculative."); <u>Homen v. Hasty</u>, 229
F. Supp.2d 290, 295 (S.D.N.Y. 2002).

simply hold that, to the extent that the Petitioner is challenging the sanctions imposed at FMC-Rochester, which do not affect the duration of his sentence, he must bring that claim as a civil rights action, rather than as a claim for Habeas Corpus relief.

Jones urges the Court to construe his Habeas Corpus Petition as a civil rights claim. See, Petitioner's Response to Government's Request to Deny Habeas Corpus Petition, Docket No. 10, at 2-3 of 9. While we recognize the principle that pro se pleadings are to be construed liberally -- and while we have applied that principle to Jones' filings -- we decline to recommend such a construction in this case.[9] As we have previously explained, on what he has presented here, Jones does not present "a well-stated claim" to justify our entertaining that claim at this juncture. See, Kruger v. Erickson, 77 F.3d 1071, 1074 n. 1 (8th Cir. 1996). We are also sensitive to the differences between the two kinds of actions, in the filing costs -- $5.00 for a Habeas Petition, and $350.00 for a civil rights action -- as well as the differences in the proper Defendants -- the Warden in a Habeas Corpus action, and those persons who are

---

[9]The cases that Jones has cited in support of this proposition concern placements in community corrections facilities, which occupy a somewhat unique place in our Circuit's jurisprudence with respect to Section 2241 Petitions. Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004)(interpreting the BOP's authority with respect to community corrections placements); Knish v. Stine, 347 F. Supp.2d 682 (D. Minn. 2004); see also, Suleiman v. Morrison, 2006 WL 1205638 at *2-3 (D. Minn., May 2, 2006).

personally involved in causing the alleged harm in a civil rights claim. See, <u>Rumsfeld v. Padilla</u>, supra at 434; <u>Beck v. LaFleur</u>, 257 F.3d 764, 766 (8th Cir. 2001).[10] Accordingly, we recommend that Jones' Habeas Corpus Petition be dismissed, as to his claim that challenges the Incident Report of September 8, 2008, and resulting sanctions, which affect only the conditions of his confinement, and are improperly brought in his Habeas Corpus Petition.

C.   <u>Jones' Motion for Sanctions</u>.

Jones has filed three (3) separate documents which he has labeled as Motions for Sanctions, see, <u>Docket Nos. 11, 12 and 26</u>. Upon examination of each document, however, it is apparent that only the first Motion for Sanctions concerns judicial sanctions against the counsel for the Respondent, pursuant to Rule 11, Federal Rules of Civil Procedure, which provides, in relevant part, as follows:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21

---

[10]Jones also urges, in a further effort to save his claim, that we construe his Petition as an action pursuant to the Administrative Procedures Act ("APA"). See, <u>Title 5 U.S.C. §§701 - 706</u>. We decline to do so, for the same reasons we have detailed in the text of this Opinion.

> days after service or within another time the court sets. If
> warranted, the court may award to the prevailing party the
> reasonable expenses, including attorney's fees, incurred for
> the motion.

Rule 11(c)(2), Federal Rules of Civil Procedure.

Jones seeks to impose sanctions upon the Assistant United States Attorney, who

represents the Respondent, as well as Angela Buege, a paralegal, for submitting an

allegedly false Declaration, see, Docket No. 7, and for incorporating the allegedly

false facts into the Respondent's Response to the Petition.  See, Docket No. 6.  While

we have serious doubts as to the merits of the request for the Rule 11 sanctions, we

find that Jones' resort to Rule 11 is foreclosed on procedural grounds, owing to his

failure to comply with Rule 11' twenty-one (21) day "safe harbor" provision.

The law of this District has recognized that the notice requirements, which

trigger the safe harbor provisions of the Rule, are to be strictly enforced.  See, Mortice

v. Providian Financial Corporation, 283 F. Supp.2d 1084, 1087 (D. Minn.

2003)(holding that letters warning that a Motion for sanctions would be filed, if the

challenged pleading was not withdrawn, did not satisfy notice requirements), citing

TRI, Inc. v. Boise Cascade Office Products, Inc., 2002 WL 31108190 at *2(D. Minn.,

September 20, 2002)(same), and VanDanacker v. Main Motors Sales Co., 109 F.

Supp.2d. 1045, 1054-55 (D. Minn. 2000).  Here, the Assistant United States Attorney

has provided a Declaration, in which she attests that Jones did not contact her, so as to provide her with notice of his intent to seek sanctions, before he filed either of his Motions.  See, Declaration of Ana H. Voss, Docket No. 14, at ¶6.  Jones has not refuted counsel's attestations.  Therefore, based upon the clear law of this District, we recommend a denial of Jones's Motion for Rule 11 Sanctions.  See, Docket No. 11.

      D.    Jones' Second and Third Motions for Sanctions.

Since Jones's Second and Third Motions request injunctive relief, and do not provide a basis for judicial sanctions -- and our independent review has revealed none -- we liberally construe them as Motions for a Temporary Injunction. Both Motions attack the legitimacy of the rehearing -- the second Motion was filed in anticipation of the rehearing, and the third after its conclusion.  See, Docket No. 12, at 1; Docket No. 26, at 1.  We recommend that the second Motion be denied as moot, as the rehearing has taken place, and that the third Motion be denied, because the conduct which is the subject of the Motion -- the rehearing and its resultant sanctions -- is not properly before the Court on the instant Petition.  See, Hillerbrandt v. Moore, 2005 WL 1662051 at *1 (E.D. Mo., July 11, 2005)("A party moving for a temporary restraining order must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."), citing Devose v.

- 26 -

Herrington, 42 F.3d 470, 471 (8th Cir. 1994); Hale v. Wood, 89 F.3d 840 at *1 (8th Cir., June 21, 1996); Becerra v. Doe, 2008 WL 4999251 at *1 (D. Minn., November 19, 2008); Frye v. Minnesota Dept. of Corrections, 2006 WL 2502236 at *1 (D. Minn., August 29, 2006).

In addition, even if the issue were properly before us, based upon the Record here presented, Jones has failed to show a likelihood of success, under the four-part test of Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109 (8th Cir. 1981). See, Mid-America Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005), citing Firefighters Local Union No. 1784 v. Stotts, 457 U.S. 561, 589 (1984)(O'Connor, J., concurring), and AM General Corp. v. DaimlerChryler Corp., 311 F.3d 796, 804 (7th Cir. 2002).  In particular, Jones has not submitted the second DHO Report, so that we could determine the basis of that decision, in order to assess the materiality of the telephone transcript evidence which, he alleges, has been denied to him, or to evaluate the other unspecified due process violations which "continued" in the rehearing, so as to evaluate his likelihood of success on the merits of his due process claim.[11]  See, Wickner v. Larson, 2010 WL 98940 at *3 n. 3 (D. Minn.,

_____

[11]Jones has alleged that the DHO violated his due process rights, by again denying him access to the full transcripts of the telephone calls.  However, the
(continued...)

January 11, 2010), citing, <u>Watkins Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003).

Further, Jones is not likely to succeed on his challenge that is based upon the Double Jeopardy Clause, which "assures three basic protections -- it protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." <u>Turner v. Johnson</u>, 46 F. Supp.2d 655, 666 (S.D. Tex. 1999), citing <u>United States v. Usery</u>, 518 U.S. 267, 273 (1996); <u>Witte v. United States</u>, 515 U.S. 389, 395-96 (1995). However, the Double Jeopardy Clause "protect[s] only against the imposition of multiple **criminal** punishments for the same offense." <u>Hudson v. United States</u>, 522 U.S. 93, 99 (1997)[emphasis in original].

It is axiomatic that prison disciplinary proceedings are not criminal in nature, see, <u>Wolff v. McDonnell</u>, supra at 556, and <u>Rudd v. Sargent</u>, 866 F.2d 260, 262 (8th

---

[11](...continued)
Supreme Court held, in <u>Wolff v. McDonnell</u>, supra at 566, that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits * * * [and may] limit access * * * to compile other documentary evidence." Therefore, a prisoner does not have "an absolute, unfettered right to present evidence at misconduct hearings." <u>Falkiewicz v. Grayson</u>, 271 F. Supp.2d 942, 950 (E.D. Mich. 2003)(finding no due process violation where the excluded evidence did not deprive the prisoner of a defense); see also, <u>Miskovsky v. Parker</u>, 2007 WL 4563671 at *12 (W.D. Okla., December 21, 2007); <u>Hudson v. McKee</u>, 2007 WL 3124656 at *7 (W.D. Mich., October 24, 2007).

Cir. 1989), and therefore, they do not implicate the Double Jeopardy Clause, which is only triggered by proceedings which are "essentially criminal" in nature.  See, Breed v. Jones, 421 U.S. 519, 528 (1975).  The reason for this rule is readily apparent: prison disciplinary proceedings concern the violation of institutional rules, and are "designed to maintain institutional security and order," and not to punish criminally. Garrity v. Fielder, 41 F.3d 1150, 1153 (7th Cir. 1994), cert. denied, 514 U.S. 1044 (1995); see also, United States v. Newby, 11 F.3d 1143, 1144 (3rd Cir. 1993). Therefore, any discipline that Jones received was not the result of a criminal proceeding, and the Double Jeopardy Clause is not implicated, in the disciplinary sanctions, nor in the fact of the rehearing.  See, Jacobs v. Angelone, 107 F.3d 877 at *3 (9th Cir., March 3, 1997)(finding no Double Jeopardy violation where the BOP had voided a disciplinary proceeding which resulted in acquittal).  Most notably, the punishments that Jones received for his rule violations were not criminal, and the process, through which Jones was punished -- that is, by appearing before the Disciplinary Committee -- was not an "essentially criminal" proceeding.

Accordingly, we find that Jones' Petition is moot, as to the DHO Hearing of March 18, 2008, and raises a challenge to the Incident Report in September of 2008, which is not cognizable in this Habeas Corpus action.  In addition, we find that Jones

has failed to abide by the twenty-one (21) day safe harbor provision of Rule 11, Federal Rules of Civil Procedure, and therefore, we recommend that his Motion for Sanctions be denied.  Lastly, for reasons expressed, we recommend that Jones' Motions, which request injunctive relief, be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Petition for a Writ of Habeas Corpus [Docket No. 1] be denied, as moot.

2.     That the Plaintiff's Motion for Sanctions [Docket No. 11] be denied.

3.     That the Plaintiff's Second Motion for Sanctions [Docket No. 12] be denied.

- 30 -

4.     That the Plaintiff's Third Motion for Sanctions [Docket No. 26] be denied.


Dated:  February 8, 2010                  s/Raymond L. Erickson
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE


NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 22, 2010,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 22, 2010,** unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.